Primary objective at this stage of our lengthy litigation is to correct the ruling on the preclusive effect of this 2020 Arbitration Award in order that Mr. Dahiya may proceed with his claims against the non-signatories. May I ask, have you represented him for the entire 20-some years? I picked him up in 2002, just before the suit was filed. And has he been known in India ever since 1999? He was repatriated in First Bedford Burn Clinic, then about 10 weeks of rehab here in New Orleans. Tried to return to the service of a vessel, came back to New Orleans, was in New Orleans essentially from 2001 to 2010, since then he's been back in India. I just did want to mention at the outset that I appreciate that the fact that we have jurisdictional objections may delay my primary objective of getting back to the claims against the non-signatories, but if there is success with the jurisdictional arguments, we can take those up in state court in due course. So I would start with what looks to be the easiest thing to dispense with, which is my Issue 3 regarding a jurisdiction where there is a lack of signature of both parties on the arbitration agreement, as it appears to be an agreement of all parties. The Speer-Drake case says that that is not required. I think you can make a pretty substantial argument that Speer-Drake was not correctly decided, but that's something that can't be attended to without non-bank consideration. So I appreciate that'll be one line in whatever the court ultimately rules on. I'll move to the second jurisdictional argument regarding the preclusive effect of the 2002 remand order entered after the case suit was originally filed in state court, removed to this court, and remand laws. Certainly well established that a remand order is a conclusive forum designation, right or wrong, it can be remanded. It probably was in accordance with the jurisprudence at that time. As time has passed, we'd say it's probably incorrect, and the position of this court has ruled it contrary. And frankly, it doesn't matter. We can stipulate that that order was incorrect. The issue is not whether that order was correct, but whether by statute, 1447D, it can be And what was determined in 2002 was that the subject matter of DeGioia's case didn't fall under the convention for whatever reason really. One thing I find unusual here is that this isn't actually the removed case that's being appealed, right? You're only appealing the newly filed federal case. So the removed case, what happened with that? They weren't consolidated, right? They were not consolidated. The removed case was directed to be administratively closed with the summary judgment ruling in this case, and so it's sitting there. The vision of a sugar plum that's dancing in my head is that if the court rules that there is no jurisdiction for this case, I can go back to the district court and request that it be administratively reopened and then remanded. I mean, it seems, if anything, your argument would be stronger in the case that was removed a second time than in this new . . . I mean, a case is newly filed, why don't you just look at whether you being . . . why doesn't the judge just look at whether there's jurisdiction? You think the removal statute says that ruling in a separate case is binding on a newly filed case. Well, and that's, I think, the issue is whether the subject matter of this case falls under the convention, and it is the same case they are looking to . . . Well, it's the same case, but it's in a different posture. Before, it had to do with whether you're going to litigate in Louisiana court and whether it was . . . or whether it was supposed to be arbitrated, and now it's asking . . . they're asking for confirmation of the arbitration award, right? I mean, it's two different cases. I think you might have something about law of the case of precedent, but I don't see preclusion as such. I take your point. My view is that analytically, this is the same case, and they could very well have simply gone back to the state court and asked that the arbitration award be confirmed since they already had that done. I think the filing that's done here with the fancy attendant claims is a fairly slick effort to try and avoid this very bar. Counsel, let me ask you. It seems to me that under Section 207 Arbitration Act, there's a right to come into federal court to enforce an arbitration award that is subject to the convention. Earlier decision that this wasn't subject to the convention, that that's actually what the district court held, I think is probably not binding since it was not appealable. It does seem to me there's a pretty good argument that you can certainly respond to something that the enforcement could be filed in federal district court. What you have is the leftover of the state court action, which was just stayed so that arbitration could proceed, and that's now been removed. Whatever questions there may be about how much was actually ordered to be arbitrated, maybe are more connected to that state court case that was removed and not to the enforcement. Why is there any defect, regardless of this other aspect to it, that you can enforce the arbitration award from the arbitrator under Section 207 in federal court? The jurisdictional grant that applies to 207 is 203. Under 203, you have to have an action or proceeding falling under the convention as the jurisdictional trigger from the federal court to begin with, if your convention made a case. The decision, the determination in 2002 was that his action or proceeding did not fall under the convention. Well, that's what the district judge held, correct? Is that the decision you're talking about? The 2002 remand order. Right. But that wasn't appealable, and isn't the case law that because it wasn't appealable, the remand is filed, but any kind of jurisdictional issue like that decided in remand is not preclusive? I don't think so. I believe, my appreciation of the jurisprudence is that that ruling is absolutely preclusive, right, wrong, or indifferent. It's preclusive of the question of federal jurisdiction for that action or proceeding. Okay, let's say we disagree with you. Where would you be on 207 allowing enforcement to be filed and at least that aspect of the case, whether it's the whole case or whether it's not the whole case is a different question, but at least that aspect of the case could continue in district court. To me, analytically, that's the question. Is the rendition of the arbitration award a new event or new ground for SWS Erectors that would allow a successive removal? Well, that's the removal thing. I'm talking about a new action. That's what I said. Basically, it would allow new grounds for jurisdiction. And to me, in my view, you come right back to 203. Is this an action or proceeding falling under the convention? And that's already been decided. Now, I certainly appreciate that you can look at that either way. I'm not sure how much I can add to it, but that's my view is that that's something that's been decided and is decided pursuant to the limited scope of federal jurisdiction and perpetuity pursuant to 1447D. Now, mind you, they still have all their defenses. They can still present to the state court with jurisdiction. Why don't you proceed? Thank you. I have a factual question. I guess it gets tricky with the conversion from Indian currency, but it looks like the award was for $130,000. But then your client was paid $300,000 in the judgment. Where did that extra $170,000 come from? Well, there was legal interest to consider. It's a very old case. The attorney's fees, court costs, frankly, the expenses of arbitration were pretty substantial. Okay. So the $130,000 award is just damages. It didn't include fees, costs? Correct. I see. So the $300,000 is just all that other stuff. Yeah. It wasn't like there was some agreement afterwards that they were going to pay. Okay. Basically, there was an agreement amongst counsel of this is the amount that would be required to satisfy this judgment. Fees and interest. Okay. Got it. Thank you. So turning to what I'm anxious to talk about whether to you all or hopefully back in the state court eventually, the preclusive effect of this arbitration award with respect to the non-signatories, district court had advanced two alternative rationales for its ruling. First was that the 2006 state appellate ruling decided arbitrability, which I disagree with. Certainly, it didn't explicitly decide it, and their contention is that it's implicit. Meanwhile, what I think we all agree on is that because the state court maintained the reference to the Arbitration and Conciliation Act of 1996, the Indian statute that allows an arbitrator to decide his own jurisdiction and determine arbitrability, that the jurisdiction to decide arbitrability belonged to the arbitrator and not to the court. And under Henry Schein and a variety of other cases, it's I think clearly established that no court had jurisdiction to the non-signatories, only the arbitrator did. The second, the alternative rationale of the district court was to cite the Gregson case and equitable estoppel and allow the non-signatories to bootstrap themselves on to the arbitration award after the fact. Under Gregson, you either have to qualify for equitable estoppel under Gregson, you either have to rely on the terms of the contract to pursue the non-signatories, which we know that's clear, or alternatively, if your allegations are of substantially interdependent and concerted misconduct against the non-signatories and the signatories, then you might be able to hook in, allow the non-signatories to require arbitration. With this interdependence, what do we know? The argument by your friend on the other side is that you have never identified the claims you have against the other defendants besides Neptune. You do have an unseaworthiness claim. Where could we look to see that you've ever identified a separate set of claims against these other defendants as opposed to the same claim that you have against Neptune and you just added other parties? Well, it's two different sets of claims. I mean, the remedies and the right of action, if you will, against Talmadge, for example, as a vessel owner for unseaworthiness is separate from your right of action against Neptune as an employer. Well, what you're telling us now, where is there in any pleading or other presentation that differentiation? I think you'd be looking at the original petition brought in 2002 to get to that. And it's two separate sets of allegations, if you will. Ultimately, this is a garden-variety maritime personal injury case. I think the reason you don't see personal injury cases getting hooked into these whole kinds of equitable estoppel is because equitable estoppel under Gregson and this whole concerted misconduct goes to basically contract-related claims where there's allegations of conspiracy with Gregson, tortious interference with contract, where the parties are working together to achieve some result that damages the plaintiff. I know you made this argument at different points in the proceedings in state and federal court. Was this something the arbitrator had presented to it, and did the India arbitration in any way address just who was responsible for the results of the arbitration? It did not. The arbitration proceeded strictly against Neptune in both the original arbitration submission and then the 2017 one that ultimately resulted in the award we're here about. He expressly disclaimed any ability to arbitrate against the non-signatories. Who expressly disclaimed? Give me the rest of that sentence. What expressly disclaimed? I didn't hear you. He expressly disclaimed a claim in arbitration against the non-signatories, and there was no objection to that. There was no intervention by the non-signatories. The non-signatories stood on the sidelines for 13 years until the arbitration worked out to their satisfaction, and now they want to join in. But if you ever have a case where somebody's waived their right to arbitrate, this is it for sure. They stood by completely on the sidelines to let Neptune arbitrate. What the district court did was, instead of applying Briggson's test, said, well, if you have any connection to this, well, any tort defendant in a multiple defendant case has a connection to it. I'm looking at the arbitral award here, and it looks to me as if it essentially considers any allegations about unseaworthiness of the vessel. Well, that's what was mentioned as part of the proof, is here's how this accident happened. But it's not something that the arbitrator was deciding, if you will, in terms of liability of the non-signatory. Well, it had to. I mean, it had to in the sense that the arbitrator apparently disregarded the idea that the supervisor had indefinitely warned the fellow, and then it describes at length how the accident occurred. And I thought there were indications. I thought that, anyway, I thought that indicated that the gravamen of his complaint was, in fact, arbitrary. I would disagree with that. That was expressly disclaimed. What she had to consider was the negligence of the supervisor, Neptune, employer. And you look at the issues submitted for arbitration, which she recites in the award, which don't include anything but the non-signatories. The fact that there was non-signatory involvement on providing the vessel, what have you, is germane to her rendition, if you will, of the judgment in the arbitration award, but is nothing that she decided, if you will, whether there was fault there or not. That was just part of here's the facts. I will stand down. We have time for rebuttal. We'll go to Mr. Pratt. Thank you, Your Honor. Arthur Pratt is on behalf of the appellees, Neptune Ship Management Services, et al. After 22 years of litigation, this is finally a straightforward case. As the Court knows, Mr. DeGio filed suit in Plaquemines Parish. There was a fair amount of litigation, but eventually those claims were sent to arbitration in India. Those claims were arbitrated in India. And your clients were defendants in that litigation. In the litigation, my clients were the defendants, correct. Mr. DeGio was sent to India to arbitrate his claims. Mr. DeGio presented claims to an arbitrator in India who issued an award in his favor. Okay, how do we know, getting back to our latest questions with your opponent, how do we know whether the arbitrator dealt with claims beyond those against Neptune?  The first is, I want to strongly push back against the suggestion that it was my clients who were obligated to present this arbitrability issue to the arbitrator. The Louisiana Court of Appeal for the Fourth Circuit ruled at bottom, Mr. DeGio, if you want to assert these claims, you have to do so in an Indian arbitration. Mr. DeGio goes to India, and as the plaintiff, the architect of his own complaint, he chooses to fashion specific claims. And now his argument is because my clients didn't somehow sue themselves in arbitration, sue to add themselves as defendants, a procedure that I'm not sure even exists. To be more accurate though, didn't the Louisiana court say the exceptions are, I forget whether it was your exceptions or their exceptions, but the order of the court simply refers to the exceptions, right? And it doesn't specifically give a ruling on who's bound by the agreement. So as to the opinion of the Fourth Circuit, Your Honor is correct. There's at least two other circumstances in which Mr. DeGio's specific non-signatory arguments were directly rejected by a court in the United States. The first is when he filed a petition for rehearing before the Fourth Circuit in which he prominently argued his non-signatory argument, right? And the Fourth Circuit denied reconsideration. Without opinion, I take it. Without an opinion. But then I would argue that this next one is even more direct. Then Mr. DeGio returns. You're talking to three judges who deny rehearings with some frequency for all sorts of reasons, but run with it if you want to. I hear you, Your Honor. And that's why I think I have a better example in addition, which is Mr. DeGio returns to the 25th JDC for Plaquemines Parish. And he asked that district judge to enter a limited stay as to Neptune alone, arguing that he has no obligation to arbitrate his claims against the non-signatory defendants. And then the 25th JDC judge, the district judge in Plaquemines Parish, rejects that argument. Now, that judge, again, didn't issue a reasoned opinion rejecting it, but that judge issued an order as is consistent with Louisiana state court practice that just denied Mr. DeGio's motion. Let me ask you, we certainly do have a ruling from the court of record, the court of appeal in this case. And it says, we find that pursuant to the convention that arbitration, the defendant's exceptions of no right of action improper venue arbitration should have been sustained in the case state pending arbitration. You rely on that mighty powerful S that's attached to the defendant word. It does seem to me to give much strength to that argument. We would have to see what actually that motion, whatever it's called, a Louisiana petition, filed in the state trial court actually said. How far were they pushing this? And how far should we read what the state court on appeal was saying? Do we have any of those pleadings in this record of how this was presented to the state trial court? I want to make sure I heard Your Honor's question correctly. Are you referring to my client's original, what would have been referred to as an exception of prematurity? I'm talking about the opinion of the court of appeal of 2006 that is saying the defendant's exceptions of no right of action. Whenever that was filed, is that in the record? The briefing on the exception of no right of action, I do not believe is in this record, Your Honor. The trial court pleadings? Isn't that a trial court motion of no exception? A couple of points here. Obviously, this appeal arises in an original case in which my clients had no obligation to file the entire trial court record. I'm not talking about any kind of waiver or whatever. I'm just trying to ask you what's in the record. What's in this record is a couple of things. Obviously, we did not file the entire state court record because, as you would expect, it's pretty voluminous. However, Mr. DeGioia's motion, post-appeal, what I'll call his post-appeal motion to modify the stay and enter it as to Neptune alone, that is in the record. I know it was attached as an exhibit to one of our pleadings before Judge Feldman. I'll apologize. I don't have the record on appeal site for that document handy, but it is in the record. Then the district judge's order denying that motion, which I'll be the first to admit didn't contain detailed reasons consistent with— At this point in time, isn't it whether the state courts were right or wrong, if they, in fact, strongly refused to allow the case to go forward— pending arbitration and said the exceptions are denied, the handwriting was on the wall as a procedural matter? That's correct, Your Honor. I actually just thought of another point directly related to this that may help Judge Southwick, and that is recall that the posture of the original appeal to the Fourth Circuit is that case Mr. DeGioia's claims had proceeded to trial and a judgment had been entered against all of— I shouldn't say that—most of the defendants. Certainly a judgment was entered as to Talmadge, the ship owner, and as to Neptune. And the Fourth Circuit vacated that entire judgment. It did not vacate the judgment as to Neptune alone. To look at this somewhat differently than at least the premise of Judge Jones' question, it does seem to me that what exactly was sent to arbitration depends on what the state courts did. So it's not water under the bridge and we don't need to worry about it. What was sent to arbitration? One way to find out what was arbitrated is what's in the arbitration award and whatever evidence of the arbitration was. But insofar as what Louisiana actually sent to its orders, it's those initial decisions in 2006 and whatever happened on remand, whatever the date of that was, on the next order. And that's why I'm asking about the pleadings to understand how they were addressing this. I do think your point is fair. I wouldn't put much weight on it. That it wasn't ignored at the time, at least in petition for rehearing. I imagine it may not have been ignored in district courts, state district courts. But there doesn't seem to be much evidence to support one way or another what the state court thought it was sending to arbitration. I think the best evidence, Your Honor, would be the state court's ruling on Mr. DeGea's motion to enter a limited stay. When Mr. DeGea goes to the state court post-appeal and says, please enter a stay as connected to the loan because I'm not required to arbitrate with the remaining defendants, and the state court denies that motion. That could just mean they thought the arbitration, not realizing it would take 30 years or whatever this is, ought to be resolved first and then they could move on with the rest of it is another way to interpret that. It is, I think, potentially one way to interpret, but I think when you look at the body of the way that this litigation has proceeded, Mr. DeGea has presented this non-signatory argument to multiple courts on multiple occasions and it has never been accepted. Another point that I want to come back to is something that, on the same topic that Judge Jones raised during my colleague's argument, and that is the question of whether the arbitrator addressed the question of unseaworthiness. On this point, I have to disagree with my colleague. Mr. DeGea specifically presented the issue of unseaworthiness to the arbitrator and the arbitrator specifically found the vessel to be unseaworthy. And I'll give citations for the court on that. In the arbitration award, and I'm looking at page 40 of the record on appeal, there's a portion here where the arbitrator is summarizing the arguments made by Mr. DeGea and she says, Learned counsel for the claimant canvassed that the accident occurred and the claimant sustained injuries on account of the unseaworthiness of the vessel and the negligence on the part of the respondent. So the allegation that the vessel was unseaworthy was specifically submitted to the arbitrator. Several pages later in the arbitrator's award, this is page 45 of the record on appeal, the arbitrator specifically finds that the incinerator on the vessel did not operate properly, quote, rendering the vessel unseaworthy. Specific finding of the arbitrator. Does that have any relevance arguably to the claims against Neptune? So the answer to your question is no, and that's in fact precisely our point. Well, no, I understand that. In no way it bleeds into that. There's no way, regardless of whether these other defendants of other parties, I don't know if it would be defendants in the arbitration, I guess it would be, were actually being considered, it's sort of part of the broader understanding of what happened out there on the vessel. So I'm just wondering how much to read into that. There's no identification. Is there any at least identification of the other now defendants in what the arbitrator was? As far as I can recall without going back and studying the arbitration opinion, I think the answer is no, the other defendants aren't mentioned. But I think the principal reason for that is because Mr. DeGioia made the strategic decision not to add them as parties to the arbitration. And I think that this issue of, the issue that you and I are talking about is related also to this point about the equitable estoppel issue with respect to the non-signatories. You know, Mr. DeGioia argues that there's no allegations of intercontinental misconduct on the part of the defendants. But yet, that point is belied, one, by his state court petition in which he alleged that the defendants were liable in Salido. It's belied by his submissions to the arbitrator in which he contends that his injuries were caused concurrently by unseaworthiness and negligence. And it's belied by the arbitrator's own ruling where she found the vessel was unseaworthy. For reasons, for some reason, the arbitrator thought that that was important enough for her to make a specific finding of fact on. And I think at a minimum, that goes to the question of whether the claims against the non-signatory defendants are substantially interrelated with the claims against Neptune. I have a question about that, counsel. This equitable estoppel, and it comes down to whether they're intertwined. And I see there's tons of cases in the motion to compel arbitration context where the courts look at that and they say, yeah, it's intertwined, everyone needs to go to arbitration. I get that. But this is a motion to confirm an arbitration award, and I don't think I've seen a case where— so Neptune, obviously, was involved in the arbitration, they can file that. I don't think I've seen a case involving confirmation of an arbitration award where parties who didn't arbitrate were seeking relief. Do you have any cases like that? And, you know, maybe it's the—I get that it might be the plaintiff's fault that the arbitration didn't include the other vessel interest, and maybe he waived arbitration. But are there cases in the confirmation context where non-parties are going to court to confirm an award they weren't part of? So I'll tell Your Honor, I've looked for those cases, and I haven't found them. So the short answer to your question is no. But to elaborate on that just a little bit, I think it's important to kind of place this in context because this is not a situation in which Mr. DeGioia filed an arbitration against Neptune and then my clients just came in later, you know, sort of proverbially out of nowhere to say that that arbitration award applies to them as well. I think we have to look at this in the context of the litigation that took place in Louisiana first. There is—we did cite a case involving a situation where a plaintiff failed to initiate arbitration as ordered by a court on a motion to compel arbitration. That's the Griggs case. You know, what happened in that case is the district court dismissed the plaintiff's claims for failure to prosecute, and this court affirmed. No, I understand that if those other vessel interests tried to sue now, which is really what's going on, I guess, in the removed case, that maybe a court could say, well, no, you had the chance to arbitrate. You were ordered to arbitrate, and you didn't. I'm just—I guess mine's more a procedural question. It just seems odd that parties that weren't involved in the arbitration are— The case we have before us, which is your clients filed to confirm arbitration. The reason for that is a practical matter. It's relatively straightforward. After the arbitration award was issued in India, Mr. DeGioia filed a motion in Plaquemines Parish State Court asking alternatively for the judgment that had been vacated by the Fourth Circuit to be reinstated. I'll leave my comments about that to the side, or for the matter to be reset for trial. At that point, all of my clients were at substantial risk of continued litigation. Neptune clearly, without a doubt, has a right to be— You removed that case again, right? We removed that case again. It just seems to me that's the case maybe where the relief for the non-Neptune interest should be. I would respectfully suggest that it can be asserted in the original action as well, because as I think the court sort of alluded to in connection with my colleague's argument, there's no real question that 9 U.S.C. 207 gives, at a bare minimum, Neptune a right of action under federal law to sue to have the award confirmed. Once the court has subject matter jurisdiction over that claim under 1331, then Judge Feldman also has supplemental jurisdiction over any other claims that are so related to that original claim as to be part of the same— What are the claims brought by the non-Neptune? So the non-Neptune defendants also brought claims supplemental to the confirmation claim for declaratory judgment that the arbitration award precluded further litigation against them, and we also saw in Judge Feldman issued an injunction prohibiting Mr. Tejeda from pursuing any further claims against any of my clients. I don't even think he appealed that. So other than to the extent that his jurisdictional arguments would require the court to vacate those orders, the answer to your question is yes, Your Honor. He did not appeal the substance of the declaratory judgment or the injunction. I don't think he requested vacating the injunction. I think that there's a—my colleague might be able to address that better than I can. As for the jurisdictional arguments, I'm not going to say very much that I haven't already said, which is it seems crystal clear to me that 9 U.S.C. 207 creates the cause of action that, as I just mentioned to Judge Costa, at a bare minimum, Neptune has to confirm the arbitration award. And the arguments that Mr. Tejeda asserts is that there's something in Section 1447D that takes that jurisdiction away. And I'll respectfully suggest to the court that the only context in which any argument, even remotely close to that one, has been countenanced by a court of appeals is in the connection of the cases that Mr. Tejeda cites, such as the Monju case, where their original action in federal court amounts to nothing more than a collateral attack on the prior remand order. As I think the panel clearly understands, that's just not what we have here. Not only did we not ask Judge Feldman to do anything contrary to the prior remand order, but none of the issues decided in the prior remand order are relevant to whether Judge Feldman had jurisdiction under Section 207. And so I think under the narrow exceptions created by cases such as Monju, where somebody's coming into federal court in a pretty clear attempt to collaterally attack a remand order, that just doesn't apply to our case. It's a completely different set of facts. And then this idea that the remand order in Tejeda 1 permanently decided federal subject matter jurisdiction, I respectfully suggest that's not correct either, because we know from cases like the SWS Erector's case that even in cases where a remand order is issued, it's not always preclusive of federal subject matter jurisdiction. And there are situations where a case can be removed a second time permissibly under this court's precedent. Let me ask you on the removal, the point you're just talking about. It seems to me one way this case could have proceeded, but you didn't want to be in state court, and that's been clear for the last 20 years, is when the arbitration is over, pursuant to the district court, but also the appellate court in Louisiana's rulings, the stay would be lifted and whatever was left would proceed in state court, is one way to proceed. All of that was because of the 2002 remand that was errant. Everyone seems to agree to that. But it still is a remand, and something has to change before you can remove again. Insofar as what was remanded, I mean we do have the enforcement action, but insofar as what was remanded, is it really true that anything relevant to that remand has changed? Because it still is, this is a case for the state courts of Louisiana to resolve, but also there was the ruling that the convention doesn't cover what's going on here. So to directly respond to your Honor's question, has anything changed, the answer is yes. The principle thing that has changed, and this is what we argued in opposition to the motion for remand that is not on appeal, is the issuance of an arbitration award in India. The convention and its enabling legislation in the United States talks about arbitration awards, and it talks about agreements to arbitrate. And the convention enabling act presents, sets out two causes of action. There's a cause of action to enforce an agreement to arbitrate, and there's a cause of action to confirm an arbitration award. And the best evidence that those are separate causes of action, your Honor, is the fact that they're contained in two separate statutes. The grant of jurisdiction to district courts to compel parties to arbitration is in section 206. The right of parties to sue to confirm an arbitration award is in section 207. So those are saying, it seems to me that, and I'm getting back to what I was saying, and maybe you have answered it, but the confirmation it seems to me is something new, the need to do that, need essentially, and it seems to be here. But insofar as the rest of this case, the removed part, that still seems to me at least tied to the initial remand that can't be challenged in any kind of untoward or alternative way. So is your argument really, you said that these two causes of action, which cause of action do you think is your best, better one to say that changed the conditions from the initial remand? Well, it's the action to confirm the arbitration award, right? We're no longer seeking, it's not, we're not seeking, my clients aren't seeking any relief under section 206. You know, can I finish? Well, the presider is in charge, but yes, you may finish your answer. My clients aren't seeking any relief under section 206. They're not seeking to enforce an agreement to arbitrate. Principally, what my clients are seeking to do is to confirm an arbitration award and to get a federal judge to order the parties as to what their rights and obligations are under that award, and that latter part, of course, relating to the non-signatory issue. Thank you. Thank you. All right, thank you. Mr. O'Brien, your final? Yes, ma'am, thank you. One point that I think needs to be made clear is that the only adjudicatory body with authority to determine arbitrability is the arbitrator. Nothing in any court says it has the power of determining arbitrability, because that was delegated to the arbitrator. The arbitrator did not determine arbitrability. To his submission in the bill dated 2007, a corrupt arbitrator in arbitration, and again in the 2017s, leading to the 2020 award arbitration. I thought the matter of who signed the arbitration agreement was for the courts to decide. Is there an arbitration agreement, step number one? Yes, there is. Okay, fine, now we refer it to an arbitrator. Who the parties are is a matter for the courts to decide. That's not my appreciation, Your Honor. Well, that was part of the state law aspect of determining the scope of arbitration agreements, state law. Yes, and I think if you look at Henry Schein and the Supreme Court case, if the parties have delegated arbitrability to the arbitrator, that's the arbitrator's call. If they haven't delegated, then it's the court's call. Here we have a clear delegation by statute under, I think, the bowels of the case. Well, again, aren't you just re-arguing the adverse result in the Louisiana courts? Well, I don't think it was an adverse result. Well, they vacated a big judgment. That part was definitely adverse, I agree. They said arbitration, and they said this, and we're going to vacate the whole judgment. You can't go against these other dependents, and therefore the natural – you could have stopped arbitration. I certainly had the right to do that, and perhaps they would have responded and said, hey, maybe we don't want to arbitrate. What we did do is we said we don't feel required to arbitrate with these non-signatories who have really no basis to claim the right to arbitrate against the EIA. And based on that, they stood aside, made no objections, let the whole thing go forward with Neptune. Now in the – cited in the brief is the young Pernapta, or maybe it's you Pernapta case that I'm sure I'm butchering the pronunciation. I think it's Judge Kastner's decision, actually. It talks about novation of arbitration agreements based on the statements of claim and response. Our statement of claim was we don't have to arbitrate with these non-signatories. They made no objection to that. That is a clear waiver of their right to arbitrate. If they wanted to arbitrate, they had the opportunity to do that. Why did you bring up unseaworthiness in that arbitration? That is the fact of the case. The EIA's injury resulted both in unseaworthiness and – And the arbitrator just threw that in. It's the facts of the case. I think it's appropriate for the reviewing judge or arbitrator to say here's how it happened. Do you have a conclusion about it even though it's allegedly Neptune's not responsible for that? Well, Neptune's not responsible for that, and she determined Neptune's liability. That's all she determined. It's clear to me that she was doing what she was – here are the issues presented to me. Here's what I've decided. Here's how this guy's accident happened. Here's Neptune's liability for that. To me, that's fairly cut and dry in the fact that she discussed unseaworthiness. I mean, that's fact from day one until today is unseaworthiness is a part of the reason for his injury. I don't understand why back whenever it was 2006 you did not choose to institute arbitration involving all those defendants because you had already tried the case. You had already lost, and this would have seemed to be your – to many people, it would have seemed to be your last resort. Well, we didn't – to my mind, we never had a decision, and in fact, I think it never could have been a decision by the court. But you argued it. You argued it, and they rejected it. And appropriately so, really, with benefit of hindsight. No, I mean you argued to the state court that they were not involved in potential arbitration, and they rejected that. They absolutely did, and they didn't have power to rule in my favor or against me on arbitrability. That was for the arbitrator. So with benefit of hindsight, I probably shouldn't have raised that argument there. I should have sent it to the arbitrator, which is what we ultimately did. Well, no, you didn't. I went to the arbitrator and said, I don't have to arbitrate with these people, and there was never a breath of opposition raised to that. I would note a couple of quick things then in my remaining few seconds. To have standing to confirm an arbitration where you have to have been a party to the arbitration. Those non-signatories were not – they had no standing to file this, at least the principal claim below it's appealed from. The burden of proving equitable estoppel is on the parties claiming it. They've produced essentially nothing other than, hey, we're in the same lawsuit as these other people. There is no concerted misconduct. I will pause as my time is up. Thank you for your appreciation. I was rounding at you. I was trying to remember. The mic came on. The court will stand in recess for ten minutes, and hopefully that will be enough to get the other counsel on the line. Thank you. Thank you. Thank you.  Thank you. Thank you. Thank you.